# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**HAWAII MOTORSPORTS, LLC,**<br><br>Debtor. | Case No. **20-10006-BPH** |

## MEMORANDUM OF DECISION

### INTRODUCTION

In this Chapter 7 bankruptcy, after due notice, a hearing was held on December 1, 2020 on creditor American Honda Finance Corporation's ("Honda") Motion to Modify Stay filed at ECF No. 127 ("Motion") along with the Objections to the Motion filed by Hawaii State Federal Credit Union ("HSFCU") (ECF No. 159), Debtor (ECF No. 161), and the Chapter 7 Trustee (ECF No. 259). Appearances were made on the record.

Pursuant to a Joint Stipulation and Request for Judicial Notice (ECF No. 260) ("Stipulation") and the Court's Order approving the Stipulation (ECF No. 263), the Court took judicial notice of the documents attached as exhibits to Proof of Claims Nos. 12 and 19, filed by HSFCU and Honda, respectively, as well as Exhibit A to the Declaration filed by Honda at ECF No. 130. After considering the arguments raised at the hearing and based on the record developed before the Court, the following constitute the Court's findings of fact and conclusions of law to the extent required by Rules 7052 and 9014.[1]

---

[1] References to "ECF Nos." refer to the docket in this case. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

## BACKGROUND & FACTS

The facts are not contested. Honda filed its Motion on July 14, 2020 seeking relief from § 362(a)'s automatic stay.[2] Along with its Motion, Honda filed a Brief in Support (ECF No. 129) ("Brief") and a Declaration of Michael H. Moore, Wholesale Operations Manager of Honda's Power Sports Services Center (ECF No. 130). Honda's Motion requests stay relief to pursue its nonbankruptcy remedies with respect to Debtor's inventory and sale proceeds pursuant to §§ 362(d)(1) and (d)(2).[3]

In its Motion and accompanying Brief, Honda asserts that stay relief is appropriate because Debtor is in possession of inventory and sale proceeds belonging to Honda under the terms of an express trust created by a "Wholesale Financing Agreement" ("WFA") between Honda and Debtor.[4] The Motion is clear that "[Honda] is not asserting that it has a perfected security interest in property of the estate."[5] Rather, Honda asserts that relief is appropriate because "[Honda] owns the Inventory Property and Sale Proceeds and the Debtor merely holds such property in trust for [Honda]" and that, based on the existence of the trust, "the property is not property of the bankruptcy estate" entitling Honda to stay relief under § 362(d)(1) appropriate.[6]

Honda further contends, based on the alleged express trust, that Debtor has no equity in the inventory or sales proceeds, the proceeds are not necessary for an effective reorganization, and stay relief is appropriate under § 362(d)(2). In support of its contentions, Honda relies

---

[2] ECF No. 127.
[3] *Id.* at 6.
[4] *Id.* at 2.
[5] *Id.*
[6] *Id.* at 2–3.

2

primarily on discrete and limited sections of the WFA, specifically §§ 1.17, 1.22 and 24.[7] "Pursuant to the WFA, the Debtor holds all property that was purchased or financed, in whole or part, by [Honda] in trust for AHFC."

HSFCU's Objection argues that Honda's request for stay relief should be denied because the inventory and sale proceeds are not held in trust for Honda. Instead, based on additional provisions in the WFA, as well as the "Wholesale Finance Security Agreement"[8] ("WFSA"), HSFCU explains Honda is a secured creditor with an attached, but unperfected security interest in the inventory and proceeds.[9] Debtor granted Honda a security interest in Debtor's assets, but Honda did not file a UCC financing Statement.[10] Accordingly, HSFCU contends that the inventory and proceeds are property of the bankruptcy estate and that stay relief is inappropriate because Honda's lien is not perfected.[11] The Objections filed by Debtor and the Trustee adopt the arguments raised in HSFCU's Objection.[12]

The arguments presented in the Motion and Objections require the Court to determine whether Debtor's inventory and sale proceeds are subject to the terms of the alleged express trust or whether the true nature of the parties' relationship is that of a secured creditor and debtor within the purview of Article 9 of the Uniform Commercial Code ("UCC"). If the latter, the Court must determine if Honda has a perfected security interest in Debtor's inventory and sale

---

[7] ECF No. 129 at 6 ("Pursuant to the WFA, the Debtor holds all property that was purchased or financed, in whole or part, by [Honda] in trust for AHFC").
[8] Exhibit A to Proof of Claim No. 19.
[9] ECF No. 159 at 2–3.
[10] ECF No. 159 at 2–3.
[11] *Id.*
[12] See ECF Nos. 161 and 259.

proceeds.[13]

## ANALYSIS

Before determining whether Honda has established that it is entitled to stay relief under §§ 362(d)(1) or (d)(2), the Court must consider the WFA and the WFSA to determine the nature of the parties' relationship. If the parties intended their relationship to be that of a trustor and trustee, Honda's argument may be persuasive. Alternatively, if the instruments bear all the indicia of a lender borrower relationship, HSFCU's objection should be sustained.

### A. The WFA.

Honda and Debtor executed the WFA on November 7, 2016. It is comprised of 87 separate paragraphs and has the stated purpose of "induc[ing] [Honda] to provide wholesale lines of credit financing" to Debtor.[14] Section 4.1 of the WFA references the WFSA, incorporates its terms by reference, and reiterates that the WFSA grants Honda a security interest in Debtor's Collateral and Debtor's sales proceeds. Section 5.1 clarifies that the term "Collateral" as used in the WFA is identical to the definition of the term provided in the WFSA.

With the exception of Section 24, many of the WFA's provisions discuss the same subject matter as their counterparts in the WFSA. Honda's Motion relies almost entirely on the

---

[13] Ordinarily, Rule 7001 requires an adversary proceeding to "determine the validity, priority, or extent of a lien or other interest in property." However, there are exceptions:

> Another common situation in which the validity of a lien might be determined in a nonadversary proceeding context is where the respondent in a motion pursuant to section 362(d) of the Code to vacate or modify the automatic stay asserts that the creditor's security interest is invalid.

10 Collier on Bankruptcy P 7001.03 (16th 2020).

[14] Exhibit B to Proof of Claim No. 19 at 1.

4

contents of Section 24. Specifically, section 24, entitled "Inventory and Proceeds of Sale to be Held in Trust," states that "[Debtor] shall hold and keep all Property and the proceeds thereof (collectively, the 'Trust Property' in trust for the benefit of [Honda]."[15]

### B. The WFSA.

The WFSA was executed by the parties on November 7, 2016 and is comprised of 67 separate paragraphs. Section A of the "Recitals" section[16] provides that "[Honda] has agreed to provide wholesale line(s) of credit financing (the "Loan") to [Debtor], which loan is evidenced by and will be advanced in accordance with [the WFA]." Section B of the Recitals states that "[a]s a condition to making the Loan to [Debtor], [Honda] requires that it be granted, and [Debtor] has agreed to grant [Honda], a security interest in the Property…and the collateral described in Exhibit "A" attached hereto (collectively, the 'Collateral')." Finally, Section C of the Recitals provides that "[Debtor] owns the Collateral free and clear of all liens, securing interests, judgments, levies, or other encumbrances, except for those in favor of [Honda]. It is the intention of [Debtor] to grant to [Honda] a security interest in the Collateral."[17]

Section 2 of the WFSA provides greater detail regarding the parties' relationship. Among other things, it expressly grants Honda a security interest in all Collateral "whether now owned

---

[15] It is noteworthy that "Trust Property" includes all Property and the proceeds of the sale of all Property, both of which are included in the definition of "Collateral." Stated differently, the term "Collateral" includes all "Trust Property" based on this definition.

[16] Section 1 of the WFSA provides that the recitals "are not merely recitals, but rather are an integral part of this Agreement and are incorporated herein by reference."

[17] The description of "Collateral" provided on Exhibit A to the WFSA includes "all personal property of [Debtor]" including but not limited to all "Property" as used in the WFSA, as well as Debtor's equipment, accounts, chattel paper, commercial tort claims, deposit accounts, documents, cash proceeds, and all of its financial assets.

or hereafter acquired," in addition to all proceeds from the sale of the Collateral.[18] Additionally, it permits Honda to file "appropriate UCC financing statements…with respect to the Collateral and [Honda's] interest therein."[19] Finally, it defines the term "Property" to include a laundry list of nearly every conceivable item of personal property Debtor could acquire and clarifies that the definition of Property "shall also mean Trust Property" as used in the WFA and WFSA.[20]

Other relevant terms are located throughout the WFSA. Section 3.2, for example, essentially reaffirms Recital A and provides that "[Debtor] has good title to and, except for Sale in the ordinary course of [Debtor's] business, is and will be the sole owner of the Collateral." Section 18 provides that the WFSA is to be construed and governed by California law. Section 20 provides for the cross-collateralization of the indebtedness created in favor of Honda by the WFA and WFSA and states that a default under the WFA constitutes a default under the WFSA, and vice versa.

### C. The WFA and WFSA created a security arrangement governed by Article 9 of the UCC.

Montana and California have both adopted Revised Article 9 of the UCC. See Mont. Code Ann. § 30-9A-101 *et seq*; Cal. Com. Code § 9101 *et seq*. As a result, the choice of law provisions in the WFA and WFSA are of little importance if the relationship between Debtor and Honda falls within the purview of Article 9. In both states, Article 9 governs "any transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract."

---

[18] Section 2.1 of WFSA.
[19] Section 2.3 of WSFA. Notably Section 2.3 is titled "*Perfection of Security Interest*; Description of Collateral." (emphasis added).
[20] Since "Trust Property" is not defined in the WFSA, Section 1 of the WFSA clarifies that its definition in the WFA is incorporated into the WFSA.

6

Cal. Com. Code § 9109(a)(1); Mont. Code Ann. § 30-9A-109(a)(1). When a security interest is created, Article 9 applies regardless of the form of the transaction or the name the parties have given it. *See* Official Comment 2 to UCC § 9-109. Instead of focusing on the form of the transaction or the name ascribed to it by the parties, the Court must look beyond the label of the transaction or the language used by the parties to describe it:

> A preeminent theme in…Article 9…is that substance governs form. If Article 9 otherwise applies, the parties cannot render it inapplicable merely by casting their arrangement in the language of some particular pre-Code device or in the language of some other transaction.

4 White, Summers, & Hollman, Uniform Commercial Code § 30:4 (6th ed. 2020). Even a cursory review of the WFA and WFSA indicates the parties entered a lender borrower, not trustor trustee relationship. Both documents expressly provide for the creation of a security interest in favor of Honda. Accordingly, it falls within the scope of Article 9.

Additionally, the WFA provides that its stated purpose is "to induce [Honda] to provide wholesale line(s) of credit financing." The WFA incorporates the WFSA by reference and provides that the security interest created by the WFSA was intended "to secure all Indebtedness of [Debtor]" owed to Honda.[21] Finally, the defined term "Indebtedness" expressly references all Debtor's repayment obligations under the WFSA and WFA.[22] This indicates that the WFSA and WFA relate to and secure the same obligation.

Even more, the "Trust Property" defined in the WFA encompasses the same categories of personal property as the "Collateral" referenced in the WFSA. Both incorporate all of Debtor's "Property" into their respective definitions. In addition to securing the same obligation, this

---

[21] Section 4.1 of the WFA.
[22] *See* Section 1.13 of the WFA.

7

indicates that both the WFA and WFSA deal with the same categories of Debtor's personal property—the personal property subject to Honda's security interest.

After examining the WFA and the WFSA in conjunction with one another, the Court cannot ignore that Honda's argument hinges on three discrete sections in the WFA. In order to adopt Honda's argument this Court would have to ignore the remaining 151 paragraphs that comprise the parties' agreement as set forth in the WFA and WFSA. Contrary to Honda's assertions, the only conclusion the Court can draw from the WFA and WFSA is that Honda intended to establish a lender/borrower financing arrangement commonly referred to as a "floor plan line of credit" or "floorplan financing."

Generally, this arrangement involves a lender who extends wholesale financing to a debtor by making loans or advances to allow the debtor to finance its acquisition of inventory. To secure these advances, the lender retains a security interest in each item of inventory the debtor acquires as well as the proceeds from the sale of that inventory. Upon the sale of any piece of inventory, the debtor is typically obligated to hold the sale proceeds "in trust" for the benefit of the lender. *See Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F. Supp. 1437, 1440–41 (S.D. Fla. 1995) (describing floor plan financing). Since floorplan financing arrangements involve the creation of a security interest in favor of the lender, they are governed by Article 9.

The relationship between Debtor and Honda in this case has all the characteristics of a floorplan financing agreement, each of which is evidenced by the WFSA and WFA. First, Honda agreed to provide "wholesale line(s) of credit financing" to Debtor.[23] To secure this credit line,

---

[23] WFA at 1; Recital A in WFSA.

Debtor agreed to grant Honda a security interest in its Property, including the "Trust Property."[24] Third, Debtor agreed to "hold and keep all Property and proceeds thereof" in trust for the benefit of Honda.[25] Each of these characteristics is undeniable, regardless of whether the reader looks at the WFA and WFSA collectively, or in isolation. Accordingly, the Court concludes that the parties' entered into a typical secured floorplan financing arrangement that is governed by Article 9. Honda's attempt to re-label the relationship as something it is not has no effect.

### D. Honda failed to perfect its security interest in Debtor's inventory.

Article 9 requires two steps to create an enforceable security interest under Article 9: attachment and perfection. *In re Grogan*, 2013 WL 5630627 *6 (9th Cir. BAP 2013) (interpreting Oregon's UCC law). Generally, attachment requires three things: 1) value must be given; 2) the debtor must have rights in the collateral; and 3) the debtor must authenticate a security agreement that provides a description of the collateral. *In re CFLC, Inc.*, 166 F.3d 1012, 1016 (9th Cir. 1999) (interpreting California's UCC law). Once a security interest is attached, it becomes enforceable by the creditor against the debtor, but not against third parties. Cal. Com. Code §9203; Mont. Code Ann. 30-9A-203(1). In this case, Honda gave value in the form of "wholesale line(s) of credit financing," Debtor had rights in the "Collateral" in which Honda took a security interest, and the parties executed the WFSA, which described the Collateral. Accordingly, Honda's interest in Debtor's inventory and sale proceeds, included in the definition of "Collateral," attached for Article 9 purposes.

---

[24] Section 4.1 in the WFA; Recital B in the WFSA.

[25] Section 24 in the WFA; Sections 2.2 and 4.1 of the WFSA (collectively providing that Debtor agreed to hold all Property (Section 2.2) and proceeds from the sale of any Property (Section 4.1) in trust for Honda).

Perfection under Article 9, on the other hand, is the mechanism that makes a security interest enforceable against third parties. *See* 9 Hawkland UCC Series § 9-308:1 (2020 ed.) (describing perfection as "the status to which all secure parties aspire" and "giv[ing] a secured party the greatest rights against lien creditors of a debtor."). "The essence of perfection is to furnish public notice of the secured party's interest in the collateral, thereby protecting third persons against secret liens." *In re Hilde*, 189 B.R. 776, 780 (9th Cir. BAP 1995). The "trust" arrangement urged by Honda appears to be precisely the sort of secret lien, or interest, perfection is intended protect against.

The law governing the perfection of a security interest under Article 9 varies depending on the type of debtor. Under both California and Montana law, the local law of the jurisdiction in which a debtor is located governs the perfection of a security interest in collateral. Cal. Com. Code § 9301(1); Mont. Code Ann. § 30-9A-301(1). In both states, "a registered organization that is organized under the law of a state is located in that state." Cal. Com. Code § 9307(e); Mont. Code Ann. § 30-9A-307(5). A "registered organization" includes limited liability companies. Official Comment 11 to Cal. Com. Code § 9102; Official Comment 11 to Mont. Code Ann. § 30-9A-102. Debtor is a limited liability company organized under Montana law.[26] Accordingly, Montana law governs the method by which Honda was required to perfect its security interest in

---

[26] *See* Exhibit A to ECF No. 159. While the Court recognizes that this exhibit was not judicially noticed pursuant to its Order at ECF No. 263, it chooses to do so on its own motion. *See* Fed. R. Evid. 201(c)(1); see also Fed. R. Bankr. P. 9017 (making the Federal Rules of Evidence applicable in bankruptcy proceedings). Exhibit A is a document from the Montana Secretary of State's website providing that Debtor is a Montana domestic limited liability company. As a public record, the contents of which is capable of accurate and ready determination from a state government website whose accuracy cannot reasonably be questioned, it is appropriate for the Court to judicially notice the facts contained in Exhibit A. *See* Fed. R. Evid. 201(b)(2).

Debtor's Property and proceeds.

Montana law requires that a financing statement must be filed with the Montana Secretary of State to perfect all security interests, subject to a few specifically enumerated exceptions. *See* Mont. Code Ann. § 30-9A-301(1). None of the categories of personal property comprising the "Property" referenced in the WFA and WFSA is included in the list of exceptions. Therefore, Honda was required to file a financing statement with the Montana Secretary of State to perfect its interest in Debtor's Property, including the Trust Property, and the proceeds of their sale.[27] Honda failed to do so.[28] Thus, it is a creditor with an attached, but unperfected security interest in Debtor's property, which is now property of the bankruptcy estate. § 541(a)(1).

### E. Honda is not entitled to relief from the automatic stay.

Based on the foregoing, Honda has failed to establish that Debtor's inventory and sale proceeds are subject to an express trust outside the scope of Article 9. Further, Honda has failed to show that it has a perfected security interest in Debtor's inventory and sale proceeds. Accordingly, it is not entitled to stay relief under § 362. *Omega Environmental Inc. v. Valley Bank NA*, 219 F.3d 984, 986 n.1 (9th Cir. 2000) ("A creditor holding an unperfected security interest is not entitled to relief from [the] automatic stay.").

## CONCLUSION

For the reasons stated above, the Court will enter a separate order denying Honda's

---

[27] *See* Mont. Code Ann. § 30-9A-315(3) ("A security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected.").
[28] Exhibit B to ECF No. 159. The Court elects to take judicial notice of Exhibit B for the same reasons set forth in footnote 25.

Motion.

Dated: December 7, 2020.

BY THE COURT:

/s/ Benjamin P. Hursh

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana